**OFFICIAL AIRLINE GUIDES, INC., Plaintiff–Appellant,**

v.

**Mindy GOSS; Sandy Vanderzanden, d/b/a Mindy's Answering Service; Churchfield Publications, Inc.; Ashbyweb Limited Company, d/b/a American Concepts; Anne–Lise Fleisher, an individual, Defendants–Appellees.**

**OFFICIAL AIRLINE GUIDES, INC., Plaintiff–Appellant–Cross–Appellee,**

v.

**CHURCHFIELD PUBLICATIONS, INC.; Ashbyweb Limited Company; Anne–Lise Fleisher; Mindy Goss; Sandy Vanderzanden, Defendants–Appellees–Cross–Appellants.**

**OFFICIAL AIRLINE GUIDES, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**CHURCHFIELD PUBLICATIONS, INC.; Ashbyweb Limited Company; Anne–Lise Fleisher; Sandy Vanderzanden, Defendants–Appellants–Cross–Appellees,**

and

**Mindy Goss, Defendant.**

Nos. 91–35597, 91–35724 and 91–35725.

United States Court of Appeals, Ninth Circuit.

Submitted July 12, 1993.*

Decided Oct. 7, 1993.

---

* The panel finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Richard E. Alexander, Dickinson, Wright, Moon, Van Dusen & Freeman, Chicago, IL, for plaintiff-appellant-cross-appellee.

Dennis E. Stenzel, Chernoff, Vilhauer, McClung & Stenzel, Portland, OR, for defendants-appellees-cross-appellants.

Before: FARRIS, FERGUSON, and THOMPSON, Circuit Judges.

FARRIS, Circuit Judge:

Official Airline Guides appeals from the district court's judgment after a bench trial finding that the use by Mindy Goss, Ashbyweb Ltd., and other defendants ("Ashbyweb") of the phrases "THE TRAVEL PLANNER USA" and "USA TRAVEL PLANNER" did not infringe OAG's trademark "OAG TRAVEL PLANNER." Ashbyweb cross-appeals from the district court's finding that Ashbyweb infringed OAG's mark by using the phrase "THE TRAVEL PLANNER," standing alone. 756 F.Supp. 1393. The district court's judgment follows a remand from this court for reconsideration of whether OAG's mark qualifies for trademark protection. We have jurisdiction of the timely appeal and cross-appeal pursuant to 28 U.S.C. § 1291.

## FACTS

### A. *OAG Travel Planner*

For more than sixty years, Official Airline Guides, Inc. has published travel directories containing listings of travel and hospitality services in the United States and abroad. OAG currently publishes and distributes three editions: a European Edition, a Pacific Asian Edition, and a North American Edition. The latter, entitled "OAG Travel Planner North American Edition," contains information about hotels, motels, ground transportation, and airline offices in various cities throughout the United States.

The North American Edition, at issue here, is distributed almost exclusively in the United States; only one percent is distribut-

ed in Europe and elsewhere. The quarterly guide is sold principally by subscription to travel agents, corporate travel coordinators and frequent flyers. Advertisers and subscribers commonly refer to the North American Edition as "OAG TRAVEL PLANNER."

To obtain information for the guide, OAG mails listing forms directly to travel and hospitality establishments. The listing forms also solicit paid advertisements for the directory. Advertisers contribute nearly sixty-five percent of OAG's revenue, the balance coming from OAG's 70,000 subscribers.

On May 31, 1966, OAG obtained a federal trademark registration for its mark "OAG TRAVEL PLANNER." The trademark examiner required it to disclaim as descriptive the words "Travel Planner." On September 1, 1987, OAG obtained a second trademark, but this time without disclaiming the words "Travel Planner." In support of OAG's second trademark application, OAG's Vice President of Sales and Marketing filed an affidavit claiming that the phrase "Travel Planner" had become distinctive as applied to OAG's guides as a result of OAG's "substantially exclusive and continuous use" in interstate commerce for more than five years. OAG's third federal trademark application, contested by Ashbyweb, is currently pending, and awaits the outcome of this action.

### B. *USA Travel Planner*

Since 1983, Ashbyweb has sold, promoted, distributed, and solicited advertisements for a travel directory similar to OAG's travel guide. Ashbyweb's directory was distributed in Europe and the Middle East under the names "THE TRAVEL PLANNER USA," "USA TRAVEL PLANNER," and "THE TRAVEL PLANNER." Ashbyweb has known of OAG's directory for over twenty years. Ashbyweb's directory, however, unlike OAG's guide, was not distributed in the United States.

Ashbyweb's first corporate sponsor was Trans World Airlines, which agreed to underwrite Ashbyweb's publication. TWA's name appeared in the title of the first edition, but only on the cover and spine of the next edition, which was called "THE TRAVEL PLANNER USA." TWA's stationery was used initially to solicit advertisements and listing information from hotels, motels, automobile rental agencies and other travel service organizations.

Ashbyweb then obtained its listings and solicited advertisements, without TWA stationery, by sending forms to various travel-related establishments. These forms, with the heading "THE TRAVEL PLANNER," made no mention of either TWA or Churchfield publications, Ashbyweb's predecessor. In addition to targeting (like OAG) hotels, car rental agencies and airline offices, Ashbyweb sent forms (unlike OAG) to charter bus lines, rail lines, tourist attractions, RV rental agencies, and national parks.

In contrast to OAG's guide, which is pitched to the American domestic traveler, Ashbyweb's directory was designed for the use of foreigners travelling to the United States. The listings are organized by state; OAG's guide is organized by city. Ashbyweb's guide lists Watts line or direct dial phone numbers for the establishments; OAG's directory contains a section of "800" numbers, dialable only in the United States. Ashbyweb's directory, unlike OAG's, contains information on travel documents and Bed and Breakfasts, European-style lodging.

Ashbyweb sold its directory in bulk and not through individual subscriptions. Between 1984 and 1986, TWA distributed copies to travel agents in Europe to encourage agents to book their clients on TWA. Pan American Airlines did the same for the 1987–88 directory, the last directory published by Ashbyweb. Ashbyweb ceased publication pending resolution of this litigation.

### C. *OAG versus Ashbyweb*

In 1987, advertisers mistakenly mailed six copies of Ashbyweb's listing forms to OAG. OAG requested Ashbyweb to cease and desist using the phrase "USA TRAVEL PLANNER." Ashbyweb did not comply.

OAG then filed suit in the district court against Ashbyweb alleging four counts: 1) Federal Trademark Infringement in violation 15 U.S.C. § 1114(1)(a); 2) False Description and False Designation of Origin in violation of 15 U.S.C. § 1125(a); 3) Trademark In-

fringement and Unfair Competition under Oregon Common Law; and 4) Disseminating Material Containing False Description and False Representation of Defendants' Business in violation of 15 U.S.C. § 1125(a). Ashbyweb counterclaimed, alleging that OAG fraudulently procured the second trademark, in violation of 15 U.S.C. § 1120, and intentionally interfered with Ashbyweb's business relations. Ashbyweb also raised two affirmative defenses: 1) laches; and 2) unclean hands in the allegedly fraudulent procurement of the second trademark.

The district court issued a temporary restraining order enjoining Ashbyweb from using "THE TRAVEL PLANNER," "USA TRAVEL PLANNER," and "TRAVEL PLANNER USA" in the marketing, distribution and sales of its products. The court then denied OAG's motion for a preliminary injunction. OAG appealed from this decision to the Ninth Circuit.

We affirmed the district court's denial of a preliminary injunction, but remanded for a determination whether the term "Travel Planner" has common law protection as a mark, and if so, whether OAG is entitled to permanent injunctive or other relief against Ashbyweb's use of the term "Travel Planner." *Official Airline Guides, Inc. v. Goss,* 856 F.2d 85, 88 (9th Cir.1988).

Since our decision, OAG has registered its trademark "OAG TRAVEL PLANNER" without disclaiming the words "Travel Planner." The district court therefore found it unnecessary upon remand to determine whether the term "Travel Planner," standing alone, has common law protection as a mark.

On September 14, 1990, over Ashbyweb's objection, the district court bifurcated OAG's claim for trademark infringement from Ashbyweb's counterclaim for intentional interference with business relations. The trademark infringement claims were tried first in the district court without a jury. The court found that Ashbyweb's use of the phrase "THE TRAVEL PLANNER" without the words "USA," "ASHBYWEB," or "CHURCHFIELD" infringed OAG's mark "OAG TRAVEL PLANNER." The court permanently enjoined Ashbyweb from using "THE TRAVEL PLANNER," standing

alone, in its publications, listing forms, letterhead, advertising, or promotional materials. Ashbyweb was permitted, however, to continue using "THE TRAVEL PLANNER USA" and "USA TRAVEL PLANNER," phrases which the district court held do not infringe any OAG trademark.

Ashbyweb's counterclaim for intentional interference with business relations was then tried to a jury, which returned a verdict for OAG. Ashbyweb's counterclaim for fraudulent procurement of trademark was dismissed on summary judgment as time barred. Both sides appeal.

### DISCUSSION

#### I. *Trademark Infringement*

The Lanham Act defines "trademark" as any combination of words or symbols used in commerce to identify and distinguish one's goods from those manufactured or sold by others and to indicate the source of the goods. 15 U.S.C. § 1127. Marks registered on the Principal Register in the Patent and Trademark Office constitute "prima facie evidence" of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. 15 U.S.C. § 1115(a).

#### A. *Distinctiveness of Marks*

■ The scope of judicial protection against infringement depends upon the mark's distinctiveness. Certain marks are deemed inherently distinctive, and afforded the greatest protection, because their intrinsic nature serves to identify a particular source of a product. *Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. —, —, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). Fanciful, arbitrary and suggestive marks are considered "inherently distinctive." *Id.*

■ A fanciful mark is a coined word or phrase, such as Kodak, invented solely to function as a trademark. *See Eastman Kodak Co. v. Rakow,* 739 F.Supp. 116 (W.D.N.Y.1989). An arbitrary mark consists of common words arranged in an arbitrary way that is non-descriptive of any quality of the goods or services. *See Stork Restaurant*

*Inc. v. Sahati,* 166 F.2d 348, 355 (9th Cir. 1948) ("[The Stork Club] is in no way descriptive of the appellant's night club, for in its primary significance it would denote a club for storks."). A suggestive mark, such as 360° for sneakers, requires imagination to make a connection between the mark and an attribute of the product. *Rodeo Collection Ltd. v. West Seventh,* 812 F.2d 1215, 1218 (9th Cir.1987); *Tanel Corp. v. Reebok Int'l Ltd.,* 774 F.Supp. 49, 51 (D.Mass.1990).

■ In contrast to fanciful, arbitrary, and suggestive marks, a descriptive mark is not inherently distinctive. *Two Pesos,* — U.S. at —, 112 S.Ct. at 2757. When used to describe a product, a descriptive mark does not inherently identify a particular source, and therefore cannot be protected. *Id.* It may nevertheless be entitled to protection if it has acquired distinctiveness through secondary meaning. *Id.* A mark acquires secondary meaning if customers associate the mark with a particular source. *See Rodeo Collection,* 812 F.2d at 1218. Steak & Brew, for example, is descriptive of a restaurant's fare, but was held to have acquired secondary meaning, and is therefore entitled to trademark protection, because customers associate the mark with a particular restaurant chain. *Longchamps, Inc. v. Eig,* 315 F.Supp. 456, 458 (S.D.N.Y.1970).

■ The generic name of a product—what it is—can never serve as a trademark. *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1014 (9th Cir. 1979). "A mark answers the buyer's questions 'Who are you? Where do you come from?' 'Who vouches for you?' But the name of a product answers the question 'What are you?'" 1 J. McCarthy, *Trademarks and Unfair Competition* § 12.01 (3d ed. 1992).

### B. *OAG Travel Planner*

■ We have held that "OAG TRAVEL PLANNER" is an arbitrary composite trademark protectable without proof of secondary meaning, even though the term "travel planner" is descriptive. *Official Airline Guides, Inc. v. Goss,* 856 F.2d 85, 87 (9th Cir.1988). We are bound by this holding as the law of the case. *See Merritt v. Mackey,* 932 F.2d 1317, 1320 (9th Cir.1991). We must therefore decide whether Ashbyweb infringed OAG's trademark "OAG TRAVEL PLANNER" by using the terms "THE TRAVEL PLANNER," "USA TRAVEL PLANNER," and "TRAVEL PLANNER USA."

### C. *Likelihood of Confusion*

"The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir.1992).

■ We have approved various tests for likelihood of confusion, but these tests "were not meant to be requirements or hoops that a district court need jump through to make the determination." *Eclipse Assocs. Ltd. v. Data General Corp.,* 894 F.2d 1114, 1118 (9th Cir. 1990). Instead, we have identified a nonexclusive set of factors that are helpful in making the ultimate factual determination of likelihood of confusion. *Id.*

The district court applied the eight factor test set out in *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979). *Sleekcraft* identified the following factors as relevant in determining likelihood of confusion:

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and degree of care likely to be exercised by the purchaser;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of product lines.

*Id.*

■ The eight factor test applies when the products are related but *not* in direct competition. *Id.* The district court found that: 1) Ashbyweb's publications are distributed exclusively outside the United States, whereas OAG's guide is primarily distributed within the United States; 2) Ashbyweb's advertisements are designed for the European mar-

ket, whereas OAG's advertisements are designed primarily for the American market; 3) general tourist and business travelers use Ashbyweb's guides, whereas tourists generally do not use OAG's publication; and 4) advertisement rates are substantially higher in OAG's directory. The district court did not clearly err in finding that the publications are related but not in direct competition. The court properly employed the eight factor test.

## 1. Strength of the Mark

Arbitrary marks are often called "strong" marks, entitled to a greater degree of protection than common or "weak" marks, because the stronger a mark, the more likely it is that consumers will think that a product or service comes from a particular source. *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir.1987). We have ruled that "OAG TRAVEL PLANNER" is an arbitrary composite trademark protectable without proof of secondary meaning, even though the term "travel planner" is descriptive. *Official Airline Guides*, 856 F.2d at 87. The district court should have followed that ruling.

■ Instead, the district court analyzed the strength of OAG's mark by examining its component parts and found that the term "Travel Planner," standing alone, is descriptive and therefore weak. But under the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace. *See California Cooler, Inc. v. Loretto Winery Ltd.*, 774 F.2d 1451, 1455 (9th Cir.1985) ("[T]he composite may become a distinguishing mark even though its components individually cannot."). The error, however, was harmless because the court correctly analyzed the other seven factors using OAG's composite mark and found sufficient likelihood of confusion to enjoin Ashbyweb's use of the phrase "THE TRAVEL PLANNER."

Ashbyweb argues that the district court erred in failing to find generic the term "Travel Planner." Ashbyweb's argument is precluded by the earlier finding of descriptiveness.

## 2. Proximity of the Goods

■ Related goods are more likely than non-related goods to confuse the public as to the producers of the goods. *Sleekcraft*, 599 F.2d at 350. A diminished standard of similarity is therefore applied when comparing the marks of closely related goods. *Id.*

■ Both directories list hotel, airline offices, and car rental agencies, and both directories were designed to plan travel within the United States. On the other hand, OAG's guide is distributed primarily within the United States, whereas Ashbyweb's directory is distributed exclusively outside the United States. OAG's advertisement rates are substantially higher than Ashbyweb's rates. Ashbyweb solicits advertisements pitched to the European market. OAG's advertisements target American domestic travelers. The district court properly concluded that the goods are not so closely related that the diminished standard of similarity should apply when comparing the marks.

## 3. Similarity of the Marks

■ The district court assesses the similarity of marks in terms of their sight, sound, and meaning. *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1363–64 (9th Cir. May 18, 1993). The marks must be considered in their entirety and as they appear in the marketplace. *Nutri/System*, 809 F.2d at 605–06. Similarities are weighed more heavily than differences. *Rodeo Collection*, 812 F.2d at 1219.

The district court found that the sight, sound, and meaning of the terms used on Ashbyweb's guides—"THE TRAVEL PLANNER USA" and "USA TRAVEL PLANNER"—are substantially different than OAG's mark. OAG's mark, "OAG TRAVEL PLANNER," appears as part of the longer title "North American Edition OAG Travel Planner Hotel and Motel Red Book." The mark is written in medium size letters in a different color than "Travel Planner." The full title covers approximately one eighth of the cover.

In contrast, the cover of Ashbyweb's guide (1984–86 editions) styles the phrase "The Travel Planner" with upward slanting letters. The phrase covers one eighth of the page, and appears above the letters "USA" which blanket more than half the cover. Ashbyweb changed the cover for the 1987–88 edition, printing the words "Pan Am," "USA" and "Travel Planner" from top to bottom in a small box one fourth the page. The district court found that consumers, subscribers and advertisers would not visually mistake Ashbyweb's covers for OAG's publication. The court further found that the sound and meaning of "OAG TRAVEL PLANNER" is not confusingly similar to "THE TRAVEL PLANNER USA" or "USA TRAVEL PLANNER."

Ashbyweb also uses the term "THE TRAVEL PLANNER," standing alone, on its listing and advertisement forms, its letterhead, and on the first page of its directory. The district court found that the term, standing alone, has a confusingly similar sight, sound, and meaning to OAG's mark. The court emphasized that: 1) both use the phrase "travel planner"; 2) "OAG" is printed in a different color than and is set off from "travel planner" on OAG's guide; and 3) advertisers are likely to view Ashbyweb's forms and associate "THE TRAVEL PLANNER" with OAG's mark. The court concluded that similarities in sight and meaning exist between OAG's mark and "THE TRAVEL PLANNER," standing alone, likely causing confusion for advertisers and subscribers.

#### 4. *Evidence of Actual Confusion*

██ Evidence of actual confusion is strong evidence that future confusion is likely, *Nutri/System,* 809 F.2d at 606, but the absence of such evidence is not dispositive. *Eclipse,* 894 F.2d at 1118.

OAG received seven of Ashbyweb's listing forms (out of 80,000 mailed by Ashbyweb), but the district court found this small number to be only de minimis evidence of actual confusion. Ashbyweb also received listing forms from different companies, although evidence suggested that, in order to save time, senders engaged in a common practice of photocopying a filled-out listing form from the publisher of one directory and sending it to the publisher of another directory.

OAG failed to demonstrate lost sales from advertisements placed in Ashbyweb's guide. Travel agents and advertisers testified that they have not confused OAG's and Ashbyweb's directories. The district court properly found no persuasive evidence of actual confusion.

#### 5. *Marketing Channels Used*

"Convergent marketing channels increase the likelihood of confusion." *Nutri/System,* 809 F.2d at 606. The court found that the marketing channels of distribution do not converge, but that marketing channels used to solicit advertisers and listers are similar. OAG markets its directory by subscriptions, whereas Ashbyweb markets its directory by advertiser sponsorships. Both use direct mail to solicit advertisers and listers. Ashbyweb's listing forms and letters to advertisers use only the phrase "THE TRAVEL PLANNER," and do not state that the guide is published by Ashbyweb or Churchfield or distinguish its name. Confusion is mitigated somewhat by Ashbyweb's cover letters which explain that "THE TRAVEL PLANNER" is created especially for USA-bound European travelers.

#### 6. *Type of Goods and Purchaser Care*

██ Both parties produce travel guides designed for travel agents and frequent flyers. In assessing whether there is a likelihood of confusion, courts look to the reasonably prudent purchaser exercising ordinary caution. *Sleekcraft,* 599 F.2d at 353. It is assumed that buyers will exercise greater care in their purchases of expensive goods. *Gallo,* 967 F.2d at 1293.

Advertisements are costly, depending upon the size of the advertisement and the publication. OAG's display ads cost from $2,400 to $16,000 annually. The district court found that great care is taken to insure that advertisements are accurate and are placed in the proper directory. Confusion is therefore unlikely among advertisers.

Travel establishments, on the other hand, exercise a lower standard of care than adver-

tisers when they return listing forms. The cost of listing their establishment is nominal or free. Accurate listings enhance OAG's reputation in the travel industry as a publisher of an accurate and high quality travel directory. The district court found that the lower standard of care exercised by listers, as evidenced by the seven misdirected listings, weighs in favor of finding an infringement. This finding appears inconsistent with the court's conclusion that the small number of misdirected listings is de minimis evidence of actual confusion.

### 7. Ashbyweb's Intent

■ When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public. *Id.* The district court found that OAG failed to prove that Ashbyweb knowingly adopted a name similar to OAG's mark.

OAG argues that the district court erred in placing on it the burden of proving Ashbyweb's intent to deceive consumers. OAG cites *E. & J. Gallo Winery*, which held that "[a] party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive consumers." 967 F.2d at 1293. The argument is misplaced.

■ OAG confuses the burden of proof with the necessary elements of trademark infringement. A party claiming trademark infringement need not prove intent to deceive because intent is not a necessary element of trademark infringement. *Rodeo Collection*, 812 F.2d at 1219 (holding that the absence of such evidence is not determinative). *Gallo* stands for the proposition that a plaintiff can prevail without proving intent to deceive. If a plaintiff can prove intent, however, he is likely to prevail because the courts then presume that the public will be deceived. *Gallo*, 967 F.2d at 1293.

### 8. Likelihood of Expansion

■ A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement. *Sleekcraft*, 599 F.2d at 354. The court found no likelihood of expansion.

OAG distributes only one percent of its North American Edition in Europe. Ashbyweb is not currently publishing its directory. Ashbyweb has no plans to market its directory in the United States when it resumes publishing its guide.

OAG contends that the district court's finding of no likelihood of expansion is clearly erroneous. OAG points to its London office which promotes OAG products, and to its introduction of various international editions of its guide as evidence that there is a strong likelihood of expansion in Europe.

OAG misses the point. The question is whether the parties are likely to compete with a similar product in the same market. *See Pacific Telesis v. International Telesis*, 994 F.2d 1364, 1369; *Gallo*, 967 F.2d at 1293. That is, whether: 1) OAG is likely to market its North American edition to USA-bound European travelers, or 2) Ashbyweb is likely to market its guide to American domestic travelers. The district court's finding that OAG failed to prove the strong likelihood of either scenario is not clearly erroneous.

### D. Was there a Likelihood of Confusion?

Of the eight factors identified in *Sleekcraft* as relevant in determining likelihood of confusion, the district court found that five factors favor Ashbyweb: 1) strength of the mark, 2) proximity of the markets, 3) evidence of actual confusion, 4) intent in soliciting the mark, and 5) likelihood of expansion. The court found that only one factor favors OAG: type of goods and purchaser care. As to the other two factors, similarity of the marks and marketing channels used, the district court found in favor of OAG, but only as to Ashbyweb's use of the phrase "THE TRAVEL PLANNER," standing alone.

The district court concluded that there is a likelihood of confusion between OAG's mark "OAG TRAVEL PLANNER" and Ashbyweb's use of the phrase "THE TRAVEL PLANNER," standing alone. The court found no such confusion between OAG's mark and Ashbyweb's use of the terms "THE TRAVEL PLANNER USA" or "USA TRAVEL PLANNER." The court therefore enjoined Ashbyweb's use of the phrase "THE

TRAVEL PLANNER," standing alone, as an infringement on OAG's mark.

The district court might have more carefully applied the eight *Sleekcraft* factors. A reasonable person could wonder whether the district court was trying, as OAG suggests, "to split the baby in half." But as we have recently emphasized, "[t]he standard of review goes a long way towards deciding the case, because we must defer to the findings of fact of the district court and not reverse unless we have a firm and definite conviction that the court erred." *Fruit of the Loom*, 994 F.2d at 1361. In deciding whether the district court clearly erred, we focus not on whether the eight *Sleekcraft* factors were applied perfectly, but on the district court's ultimate factual finding concerning likelihood of confusion. *Pacific Telesis*, 994 F.2d at 1369 (affirming ultimate finding of likelihood of confusion even though district court clearly erred in applying one of the factors). Considered in their entirety, the facts found by the district court support the ultimate factual finding of likelihood of confusion.

## II. *Unauthenticated and Hearsay Evidence*

Ashbyweb argues that the district court erred in admitting into evidence unauthenticated and hearsay envelopes addressed to "OAG Travel Planner." The evidence was admitted for the limited purpose of demonstrating that consumers associate the term "Travel Planner" with OAG. Consumer perceptions are relevant in determining whether a non-inherently distinctive mark has acquired secondary meaning and should therefore be treated as a strong mark. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir.1985).

Ashbyweb concedes, however, as it must, that the alleged error is harmless if we find that OAG was not required to prove secondary meaning for the term "Travel Planner." Although the district court was instructed upon remand to consider consumer perceptions in determining whether the term "Travel Planner" is protectable, it was only because OAG expressly disclaimed the words "Travel Planner" apart from the mark as a whole.

OAG no longer disclaims the words "Travel Planner" apart from the mark as a whole. The composite mark "OAG TRAVEL PLANNER" constitutes an arbitrary mark that qualifies for trademark protection without the need to prove secondary meaning. *Official Airline Guides*, 856 F.2d at 87. The alleged error was harmless.

## III. *Dismissal of Counterclaim under 15 U.S.C. § 1120*

Ashbyweb argues that the district court erred in dismissing as time barred its counterclaim alleging that OAG secured trademark registration of the phrase "OAG TRAVEL PLANNER" through fraud by failing to disclose OAG's own and other's widespread generic use of the words "travel planner" in the travel planning industry. The Lanham Act creates civil liability for false or fraudulent trademark registration. Section 38 of the Lanham Act provides that:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. It is undisputed that the applicable statute of limitations, borrowed from Oregon law, is two years.

On September 1, 1987, OAG procured a trademark for the phrase "OAG TRAVEL PLANNER." On November 23, 1987, OAG filed a motion to amend its complaint, alleging Ashbyweb's infringement of the trademark. Ashbyweb immediately opposed the amendment, asserting that OAG had made false statements when it procured the trademark. OAG's motion to amend the complaint was not granted until February 7, 1990. Ashbyweb filed its counterclaim on February 16, 1990.

Ashbyweb argues that its counterclaim under Section 38 did not arise until it was obligated to defend OAG's allegation of trademark infringement. In other words, Ashbyweb contends that, until it was forced

to incur the expense of defending OAG's trademark infringement suit, it lacked standing to sue as "any person injured" by a fraudulent trademark registration. Under this theory, the clock started to run on February 7, 1990, when the district court granted OAG's motion to amend its complaint. The contention lacks merit.

Any person who has a reasonable interest to be protected against the use of fraudulent statements in procuring a trademark registration—such as one who attempts to sell, market, license, or commercially exploit any product with the same name as the fraudulently procured trademark—may maintain a suit under Section 38. *Jackson v. Lynley Designs, Inc.*, 729 F.Supp. 498, 499–500 (E.D.La.1990). Standing is not limited, as Ashbyweb suggests, to those who are forced to defend trademark infringement actions.

Ashbyweb could have brought a separate action against OAG on September 1, 1987, when OAG procured the registration by using allegedly false statements. Instead, Ashbyweb waited until February 16, 1990, more than two years after the cause of action accrued. The district court properly dismissed as time barred Ashbyweb's counterclaim under Section 38 of the Lanham Act.

IV. *Improper Closing Argument*

■ Ashbyweb argues that the jury verdict in favor of OAG on Ashbyweb's counterclaim for intentional interference with business relations should be set aside because OAG's counsel attempted to testify to the jury concerning Ashbyweb's culpability. During closing argument, the following exchange took place:

> [OAG]: ... Now their use was not an innocent use. They knew that we had used ["Travel Planner."] In fact [one defendant] testified, as his wife did, they had known of our use of travel planner for over 20 years.
>
> [Ashbyweb]: That is not certain.
>
> [OAG]: Yes, it is. That is what he testified to, that is absolutely—I will swear on that.
>
> The Court: Sir, it is highly improper to swear before the jury or to put your reputation on truthfulness in issue. You are not a sworn witness.
>
> Ladies and gentleman of the jury, you will remember the facts of the case. I'm sure you will take notes and I will instruct you on the law as it applies to those facts, but what these lawyers say is not evidence and their arguments between each other are irrelevant.

Although the argument was improper, the district court's immediate curative instruction eliminated any potential prejudice to Ashbyweb. *See Mateyko v. Felix*, 924 F.2d 824, 827–28 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Reversal is not warranted.

V. *Rule 16(f) Sanctions*

■ Finally, Ashbyweb argues that the district court erred in imposing sanctions, in the amount of $5,804.78 in attorney's fees and costs, for its failure to obey the court's order regarding settlement conference. Both parties were directed to have someone available by telephone with settlement authority or to have attorneys present with settlement authority themselves. Ashbyweb failed to comply with this order. Ashbyweb's attorney appeared alone, without settlement authority, and no one was available by telephone with settlement authority. The district court did not abuse its discretion in awarding sanctions. *See* Fed.R.Civ.P. 16(f); *Ford v. Alfaro*, 785 F.2d 835, 839 (9th Cir. 1986); *Dvorak v. Shibata*, 123 F.R.D. 608 (D.Neb.1988).

■ Ashbyweb also challenges the amount of the award, arguing that: 1) OAG's Vice President was not required to be present at the settlement conference ($1667.28 in costs); and 2) attorneys' fees should not have been awarded to OAG for responding to Ashbyweb's motion for reconsideration ($1,050 in fees). Both arguments lack merit.

Even though OAG's Vice President was not specifically required by order to be present, he wisely appeared. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 655 (7th Cir.1989) (en banc) (upholding sanctions against corporation for failure to comply with court order to have "corporate representative" attend settlement con-

ference, even though attorney was authorized to speak on behalf of principals). His costs were unnecessarily incurred because of Ashbyweb's failure to comply with the court's order. Awarding his costs falls within the court's broad discretion to impose sanctions. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).

■ Ashbyweb's second argument is more creative, drawing upon an analogy to Rule 11. We have held that a party is not entitled automatically to attorneys' fees on appeal for successfully defending the district court's imposition of Rule 11 sanctions on the opposing party. *Business Guides v. Chromatic Communications Enters.,* 892 F.2d 802, 814 (9th Cir.1989). In other words, not *every* cost on appeal from an award of Rule 11 sanctions is a cost "incurred because of" the violative filing in the district court. *Orange Production Credit Ass'n v. Frontline Ventures, Ltd.,* 801 F.2d 1581, 1582 (9th Cir. 1986).

Courts retain *discretion* to award attorneys' fees on appeal as costs "incurred because of" the district court filing. *See Business Guides,* 892 F.2d at 813 (rejecting argument that "a party who defends a Rule 11 sanction on appeal should be awarded the costs of attorneys' fees *automatically.*") (emphasis in original). There is no reason to accord the district courts any less discretion under Rule 16(f).

**AFFIRMED.**

FERGUSON, concurring and dissenting:

I join the majority's holding that Ashbyweb did not infringe OAG's trademark over "OAG TRAVEL PLANNER" by using the phrases "The Travel Planner USA" or "USA TRAVEL PLANNER." I dissent, however, from the majority's conclusion that Ashbyweb infringed OAG's trademark by use of the phrase "THE TRAVEL PLANNER."

Ashbyweb demonstrated at trial the obvious proposition that "travel planner" is a generic term, like "answering machine,"

"sports car," or "tennis shoe." Such terms are free for all to use, standing alone, to identify their product. The majority opinion permits "[o]ne competitor ... to impoverish the language of commerce by preventing his fellows from fairly describing their own goods." *Anti–Monopoly, Inc. v. General Mills Fun Group, Inc.,* 684 F.2d 1316, 1319 (9th Cir.1982) (citations omitted).

I

A

The majority does not even decide whether "travel planner" is a generic term because it mistakenly believes that the issue was resolved by a previous panel and now stands as the law of the case. *See Official Airlines Guides, Inc. v. Goss,* 856 F.2d 85, 87 (9th Cir.1988) (*"OAG I"*). The majority misreads *OAG I,* seizing upon and badly misconstruing one isolated phrase in that opinion. Moreover, the majority completely ignores the fact that *OAG I* actually remanded to the district court for a finding on the genericness of the term "travel planner." [1]

The majority relies solely on the following sentence to support its conclusion that the previous panel held that "travel planner" is not generic:

> The arrangement of letters "OAG"—as coupled with the *more descriptive term "Travel Planner"*—constitutes an arbitrary mark....

*Id.* (emphasis added).

The majority pounces upon the phrase "the more descriptive term 'Travel Planner' " as if it were a holding that "travel planner" is descriptive—and therefore not generic. The majority has misapprehended a comparative phrase indicating relative position along a spectrum as if it were categorical.

As the Supreme Court has explained, "[m]arks are often classified in categories of generally increasing distinctiveness...." *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). Our circuit has "iden-

---

1. During the course of my numerous attempts to persuade the majority as to the folly of its ways, I proposed that we submit this dispute to binding

arbitration at the hands of Judge Goodwin, author of *OAG I.* The members of the majority declined my offer.

tif[ied] four categories of trademarks: (1) generic (or common descriptive), (2) merely descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 329 (9th Cir.1983) (citations omitted), *rev'd on other grounds*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

The first two categories both involve purely descriptive terms. A generic, or common descriptive, term describes "the genus of which the particular product is a species"; a merely descriptive mark "describes the qualities or characteristics of a good or service." *Park 'N Fly*, 469 U.S. at 194, 105 S.Ct. at 661. In the third category are suggestive marks, which are less descriptive than the first two categories. It requires more than a small amount of imagination to make an association between a suggestive mark and the goods or services it identifies. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir.1987). Finally, an arbitrary or fanciful mark "is in no way descriptive" of the good or service. *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 355 (9th Cir.1948).

*OAG I* held that "OAG TRAVEL PLANNER," taken as a whole, is an arbitrary mark. The panel found that the mark, in its entirety, is in the category of arbitrary because the mark includes the completely nondescriptive "arrangement of letters 'OAG.'" In construing the entire mark, the panel in passing compared its component parts: the panel noted that "Travel Planner" was *more* descriptive than the arbitrary letters "OAG."

The panel, however, gave no indication whether it considered "travel planner," standing alone, to be in the category of merely descriptive or in the category of common descriptive (i.e., generic). In no way did the panel hold that "travel planner" is in the category of descriptive and therefore not in the category of generic.[2]

**B**

Furthermore, the prior panel could not possibly have held that "travel planner" is not generic because it remanded for the district court to determine that very issue. The district court in *OAG I* had found, at the preliminary injunction stage, that "travel planner" was a generic term and thus was unprotectable as a trademark. *OAG I* found that the district court erred in doing so; this was not because the panel held that "travel planner" wasn't generic, but rather because the panel concluded that the district court had not yet been presented with the evidence necessary to support a finding of genericness:

> The district court erred in finding the term "Travel Planner" to be generic and therefore unprotectable because Ashbyweb failed "to provide any evidence with respect to consumer perceptions." Upon remand, the district court should consider such evidence in determining whether the term "Travel Planner" is protectable.

*OAG I*, 856 F.2d at 87, citing *Park 'N Fly*, 718 F.2d at 330, and *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455–56 (9th Cir.1985).

This is a clear directive to the district court to consider the relevant evidence and then determine whether "travel planner" is generic and therefore unprotectable, or whether "travel planner" is not generic and is therefore protectable.[3]

**II**

The district court, however, did not make a finding concerning the genericness of "travel planner," despite *OAG I*, and despite Ashbyweb's entreaties that it do so. The majority here also sidesteps that crucial question. Because we are not actually bound by the law of the case as to whether "travel plan-

---

2. *Cf. Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1016 (9th Cir.1979) (using "descriptive," "common descriptive," and "generic" synonymously, and summarizing a concurring opinion in a different case that found a term to be "so 'highly descriptive'" as to be generic).

3. The language of this passage, along with a cursory inspection of the case law cited therein, makes clear that *OAG I* remanded for a determination of genericness, *not* for a determination of whether "travel planner" as a descriptive term possessed secondary meaning, as the majority apparently believes. *See* majority opinion at § II.

ner" is generic, we must decide the issue ourselves.

The Supreme Court has imposed an onerous burden on parties such as OAG that attempt to prove that an unregistered, descriptive term such as "travel planner" is not generic. Such parties "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *See Surgicenters,* 601 F.2d at 1016 (emphasis deleted), quoting *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). In other words OAG must show that, to the consuming public, the primary meaning of "travel planner" is the specific product produced by OAG, rather than a generic reference to any travel guide or travel directory.

At trial, the *only* such evidence OAG introduced was a number of envelopes addressed to "OAG Travel Planner." As the majority explains, the envelopes were "admitted for the limited purpose of demonstrating that consumers associate the term 'Travel Planner' with OAG." *See* majority opinion at § II. Ashbyweb argues that the envelopes were unauthenticated and hearsay. Although they were not inadmissible hearsay because they were introduced to demonstrate state of mind, they were inadmissible as unauthenticated. OAG presented no admissible evidence whatsoever to prove that "travel planner" is not generic.

Even putting aside the issue of authentication, there is virtually no probative value in a handful of envelopes addressed to "OAG Travel Planner"; the envelopes are woefully inadequate to prove that the primary significance of "travel planner" in the minds of the consuming public is not a travel directory, but solely OAG's travel directory.

In contrast, Ashbyweb introduced sixty-four examples of the generic use of the term "travel planner" in magazines and newspapers, along with thirty-nine examples of "travel planners" published by various governmental agencies. Furthermore, Ashbyweb introduced the testimony of five individuals from travel agencies, travel bureaus, and advertisers who all stated that they considered "travel planner" to be generic, and that they had not confused OAG's and Ashbyweb's publications.

I do not think it can seriously be disputed that the evidence of consumer perceptions presented to the district court mandates a finding in favor of Ashbyweb that "travel planner" is generic.

## III

Because "travel planner" is a generic term, Ashbyweb cannot logically be enjoined from use of "The Travel Planner." In other words, even when an arbitrary mark (such as "OAG Travel Planner") encompasses a generic term (such as "travel planner"), use of the generic term standing alone cannot constitute a trademark infringement.[4]

Here, the only basis of similarity the district court found between the "OAG Travel Planner" and "The Travel Planner" was the use of the words "travel planner." Because these words are generic and because there was no basis for finding a likelihood of confusion other than the use of these words, the district court erred in entering the injunction against Ashbyweb's use of "The Travel Planner."

The majority is caught in the grip of a holding that is not only obviously wrong, but that is also nonexistent. I therefore respectfully dissent.

---

4. This is not to say that because Ashbyweb only used a generic term, it could not be guilty of trademark infringement. For instance, Ashbyweb could be liable if it used the term "The Travel Planner" in conjunction with a logo that looked very much like that used by the "OAG Travel Planner." *See Kellogg,* 305 U.S. at 119–22, 59 S.Ct. at 113–15.