**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABERCROMBIE & FITCH CO.;
ABERCROMBIE & FITCH TRADING
CO.,
          *Plaintiffs-Appellants,*

          v.

MOOSE CREEK, INC.; JUNO OF
CALIFORNIA, L.L.C.,
          *Defendants-Appellees.*

No. 06-56774

D.C. No.
CV-06-06245-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
April 17, 2007—Pasadena, California

Filed May 22, 2007

Before: Jerome Farris and Ronald M. Gould, Circuit Judges,
and Kevin Thomas Duffy,* District Judge.

Opinion by Judge Farris

*The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

## COUNSEL

William Bradford Reynolds (argued), John G. Froemming & Jessica Bradley, Howrey LLP, Washington, DC, Bobby Ghajar, Howrey LLP, Los Angeles, California, for the appellants.

Timothy J. Toohey (argued), Daniel C. Tepstein, Hunton & Williams, LLP, Los Angeles, California, for the appellees.

## OPINION

FARRIS, Circuit Judge:

Abercrombie & Fitch Co. interlocutorily appeals the district court's denial of Abercrombie's motion for a preliminary injunction enjoining Moose Creek, Inc. from using newly designed moose marks pending the resolution of Abercrombie's suit alleging trademark infringement and other causes of action under federal and state law. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## I.  BACKGROUND

This is the second time in four years that trademark litigation between these parties has reached this forum. The first litigation began in 2004, when Moose Creek filed a trademark infringement action alleging that Abercrombie's Silhouette Moose Logo was confusingly similar to Moose Creek's moose marks. Moose Creek sought but was denied a preliminary injunction against Abercrombie's use of its logo. *See Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214 (C.D. Cal. 2004). We affirmed. *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 114 F. App'x 921 (9th Cir. 2004).

In 2004, during the pendency of the action, Abercrombie developed and began using a new mark, the Outline Moose Logo, in addition to its Silhouette Moose Logo. Since then, Abercrombie has often used these two logos as the only outwardly visible indicator of origin on a large share of its apparel.

The parties settled Moose Creek's suit in August 2005. The settlement agreement included provisions that the parties would retain the rights to use their respective moose marks, that they would not use each other's marks, and that Moose Creek would no longer use its "Moose Creek Polo Moose" mark or any "colorable imitation thereof."

In August 2006, Abercrombie became aware of Moose Creek's use of two new logos, a moose silhouette and a moose outline. Abercrombie filed suit against Moose Creek on September 29, 2006 alleging federal trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and trademark infringement, unfair competition, unjust enrichment, and breach of contract under California common law.

Abercrombie moved to enjoin Moose Creek's use of its new marks pending resolution of the action. The district court

found a number of Abercrombie's arguments to be contrary to its position in the prior litigation and thus barred by judicial estoppel. The court also found that the differences between the parties' marks outweighed the similarities. Concluding that Abercrombie had not demonstrated a likelihood of success on either its trademark or breach of contract claims, the district court denied Abercrombie's motion for a preliminary injunction.

## II.   DISCUSSION

We review a district court's denial of a preliminary injunction for abuse of discretion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). "Under this standard, reversal is appropriate only if the district court based its decision on clearly erroneous findings of fact or erroneous legal principles." *Id.* at 1046.

To obtain a preliminary injunction in a trademark case, a plaintiff must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Id.* Irreparable injury is ordinarily presumed upon a showing of a likelihood of success. *Id.* at 1066.

**[1]** "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Id.* at 1053 (internal quotation marks and citations omitted). In *AMF Inc. v. Sleekcraft Boats*, we listed eight non-exclusive factors relevant to determining the likelihood of confusion between related goods: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d

341, 348-49 (9th Cir. 1979), *abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).

## A.  Judicial Estoppel

Abercrombie challenges the district court's application of judicial estoppel to Abercrombie's arguments regarding three of the *Sleekcraft* factors and post-purchase confusion. We review the district court's application of judicial estoppel for abuse of discretion. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

Several factors typically inform a court's decision whether to apply judicial estoppel. First, "a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Second, courts often inquire whether the party achieved success in the prior proceeding, as "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). Third, courts consider whether, if not estopped, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the other party." *Id.* at 751.

### 1.  Strength of the Mark

The district court barred Abercrombie's arguments regarding the strength of its mark, the first *Sleekcraft* factor. In the prior litigation, Abercrombie successfully persuaded the district court that Moose Creek's mark, though arbitrary and thus presumptively strong, must nonetheless be classified as weak due to the "crowded field"[1] of similar marks. *Moose Creek*,

---

[1]"In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *Miss*

331 F. Supp. 2d at 1224. The court therefore estopped Abercrombie from arguing that the field was not crowded, finding Abercrombie's position that "the competitive framework for the dispute . . . and the competition that exists in the marketplace" had changed to be "entirely different" from its previous position.

**[2]** However, the district court failed to recognize that the relevant "fields" in the two litigations differ in both scope and size. Previously, when Moose Creek was the senior mark holder, the field included competitors using both marks including moose images and marks including the word "moose." As Abercrombie is now the senior mark holder, however, the field includes only competitors whose marks incorporate moose images. In light of this reduction in scope of relevant competitors and marks, the corresponding field is less crowded. Furthermore, Abercrombie presented evidence that its trademark enforcement had resulted in several competitors abandoning their use of moose images. It was not clearly inconsistent for Abercrombie to assert that the field is now less crowded. The district court's contrary holding and estoppel of Abercrombie's arguments was an abuse of discretion.

### 2.   Marketing Channels Used, Likelihood of Expansion of the Product Lines

**[3]** The district court also estopped Abercrombie's arguments regarding the fifth and eighth *Sleekcraft* factors, marketing channels used and the likelihood of expansion of the product lines. Noting Abercrombie's prior position that it and Moose Creek focused on different customers, the court rejected Abercrombie's attempts to show that Moose Creek had since expanded its customer base to include end-users.

---

*World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (internal quotation marks and citation omitted), *abrogation in part on other grounds recognized by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990).

**[4]** Abercrombie presents two pieces of evidence to distinguish its position on this issue from the prior litigation: Moose Creek's sale of products to J.C. Penny and Moose Creek's reorientation of its website as an apparent online store listing retail rather than wholesale prices. However, J.C. Penny, like Moose Creek's other customers, is a retailer, and at the time of the district court's decision, Moose Creek's website stated that its "Web Store is currently under construction and *for products demo only*." (emphasis added). These fail to rebut the determination of clear inconsistency. The application of judicial estoppel on this issue was not an abuse of discretion.

### 3. Degree of Care Likely To Be Exercised by the Purchaser

**[5]** Abercrombie also appeals the court's estoppel of Abercrombie's arguments regarding the degree of care likely to be exercised by the purchaser, part of the sixth *Sleekcraft* factor. In the previous litigation, Abercrombie argued that Moose Creek's buyers were sophisticated and exercised a high degree of care, militating against the likelihood of confusion. *Moose Creek*, 331 F. Supp. 2d at 1231. On that basis, the district court estopped Abercrombie from arguing that the relevant buyers exercise a lesser degree of care. This was an abuse of discretion.

**[6]** Different purchasers were relevant to each suit. In the prior litigation, the relevant purchasers were Moose Creek's, who were "professional commercial clothing buyers." *Id.* at 1231. Here, the relevant purchasers are not professional buyers, but Abercrombie's ordinary customers.[2] The two groups

---

[2]Abercrombie makes much of the fact that the present litigation is a forward confusion case while Moose Creek's previous suit was a reverse confusion case. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) ("Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored

exercise different levels of care: "when the relevant customers are professional buyers, they are less likely to be confused than are ordinary consumers." *Moose Creek*, 331 F. Supp. 2d at 1231. Abercrombie's positions in the two litigations regarding the degree of care concerned different types of purchasers. It was error to hold that the two positions were clearly inconsistent.

### 4.   Post-Purchase Confusion

**[7]** The district court also estopped Abercrombie from arguing post-purchase confusion. While trademark actions commonly focus on purchaser confusion, post-purchase confusion — confusion "on the part of someone other than the purchaser" — may also ground a trademark infringement claim under the Lanham Act. *See Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002). It may also come into play in analyzing certain *Sleekcraft* factors. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076-79 (9th Cir. 2006).

The district court described the doctrine in terms of purchasers: "once people have purchased these competing products, although from different sources, from different channels, and under different circumstances, they are going to put them

by, the senior mark holder. . . . By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one."). However, the more critical point — what party's purchasers are relevant for this factor — follows the same rule in both types of suits. *Compare Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1095 (C.D. Cal. 2003) ("In a reverse confusion case, the degree of care exercised by customers is determined with reference to the alleged senior user's customers only." (internal quotation marks and citation omitted)), *with M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1084-85 (9th Cir. 2005) (analyzing degree of care with regard to senior mark holder's consumers in forward confusion case). Thus, the more significant change here is the shift in which party is the senior user.

in the same drawer and hang them on the same shelf and fail to distinguish between them." The court's later correction — that it meant not initial purchasers but "the ultimate wearers" — did not sufficiently expand the court's focus, as it continued to exclude those who "simply see[ ] the item after it has been purchased." *Karl Storz*, 285 F.3d at 854.

**[8]** In addition to reliance on this legal error, the district court abused its discretion by estopping Abercrombie's arguments on this issue since neither Moose Creek nor Abercrombie raised it in the prior litigation. The court's determination that Abercrombie's assertion of post-purchase confusion differed from its former position that the parties have different marketing channels was improper. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 989-90 (Fed. Cir. 1993) (finding marketing channels immaterial to post-purchase confusion).

## B.   Non-estopped *Sleekcraft* Factors

### 1.   Similarity of the Marks

Abercrombie challenges the district court's conclusion with regard to the third *Sleekcraft* factor that "the differences . . . outweigh the similarities" as to both the parties' silhouette and outline marks. "[T]he district court's findings on similarity of the marks must be upheld unless clearly erroneous." *Sleekcraft*, 599 F.2d at 351.

The district court identified five distinguishing characteristics between Moose Creek's and Abercrombie's silhouette marks: (1) Moose Creek's mark "is a lot less defined"; (2) Moose Creek's mark has "white horizontal dividers or markers on the legs separating the torso from the legs" missing from Abercrombie's mark; (3) Abercrombie's "silhouette is a much cleaner, much more realistic, much less fanciful, . . . much more anatomically authentic depiction of a moose than

is Moose Creek's silhouette"; (4) Moose Creek's mark has "a smudge . . . on the body toward the rear haunches and above the right leg that's absent in the Abercrombie silhouette"; and (5) "very, very importantly, the front legs are crossed in the Moose Creek silhouette" but not Abercrombie's mark.

All but the last of these observations apply only to the version of Moose Creek's silhouette mark printed on the masthead of its Spring 2007 catalog. However, "marks must be considered in their entirety and as they appear in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). The crucial object of comparison is not Moose Creek's mark as it appears on an ephemeral catalog, but rather as it appears embroidered on a substantial portion of the company's apparel.[3] The embroidered version of the mark lacks the first four distinguishing characteristics relied upon by the district court.

Similar errors influenced the district court's decision regarding the parties' outline marks. Again, the district court identified several differences, including the better definition of Abercrombie's mark, the crossed front legs of Moose Creek's mark, and that while "[t]he head of the moose for Abercrombie is better defined and, for example, you can see the eye, . . . one can't distinguish where the eye would be on the Moose Creek outline."

**[9]** But again, all but one of the differences are a product of the differing quality of the examples the court examined. Although the only available renditions of Moose Creek's outline mark in the record were photographs of the mark as it appeared on Moose Creek's apparel, the district court apparently chose to compare these depictions to a clean, crisp copy of Abercrombie's outline mark. However, when the marks of both parties are instead viewed "as they appear in the market-

---

[3]Photographs of apparel featuring the mark so embroidered appeared prominently throughout Moose Creek's catalog.

place" — that is, when the marks of both parties are compared as they appear embroidered on their respective apparel — any semblance of difference in precision vanishes. The better definition of the head of Abercrombie's mark also disappears when the marks are compared in this fashion. Instead, both appear to have an eye, neither of which is delineated in any detail.

**[10]** The sole remaining difference is the crossed front legs of Moose Creek's marks. Though it distinguishes them from Abercrombie's marks, the crossed legs are also a significant departure from the "three-legged" left-facing silhouette previously used by Moose Creek. Unlike this prior mark, Moose Creek's new marks have a visible space between the legs above their crossing point, intensifying rather than reducing the similarity with Abercrombie's marks. Overall, the crossed front legs are a "trivial distinction[ ]" with no effect on our observation that "[w]ith a single glance at the two images, one is immediately struck by their similarity." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).

**[11]** The similarities between the marks are striking. Both sets of marks face left, are realistic monochromatic silhouettes, and share near-identical proportions. Both are used as the only outward indication of origin for certain apparel. Of particular moment is that Moose Creek's marks share the distinctive "swivelled antlers" feature of Abercrombie's marks.[4] Moose Creek's outline mark also shares an additional unique feature of Abercrombie's mark — "the second diagonal strip in the lower part of the neck near the shoulders," a line devised by the creator of Abercrombie's outline mark because although unrealistic, he thought it looked good. In light of the principle that "similarities are weighed more heavily than dif-

---

[4]Abercrombie's mark is unique in that its perspective of the moose is inconsistent: while the moose's head is viewed directly from the side, the antlers are a "3/4 view," as if they had been swivelled on the moose's head.

ferences," *id.*, our comparison of Abercrombie's and Moose Creek's marks leaves us "with a definite and firm conviction that [the district court's] conclusion is incorrect." *Sleekcraft*, 599 F.2d at 352. The district court's finding that the marks were more different than similar was clearly erroneous.

### 2.   Defendant's Intent in Selecting the Mark

**[12]** Abercrombie argues that the district court erred by failing to seriously consider Moose Creek's intent in redesigning its moose marks, the seventh *Sleekcraft* factor. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) (internal quotation marks and citations omitted). According to Abercrombie, Moose Creek's use of the swivelled antlers and the second diagonal line evince an intent to deceive.

**[13]** The district court acknowledged the suspicion aroused by Moose Creek's adoption of the second diagonal line on the outline mark, saying that it "may reflect a negative or invidious . . . intent on Moose Creek's part," but the court did not pursue the matter further. This was not an abuse of discretion. This is not a case where a would-be competitor adopts a mark virtually identical to that of a well-known mark without any record of similar prior usage. Moose Creek has been using moose-related marks since 1989, and the district court's apparent conclusion that the similarity between Moose Creek's new variations and Abercrombie's marks did not support a finding of intent to deceive was not clearly erroneous.

### C.   Preliminary Injunction

**[14]** The district court's errors affected three of the *Sleekcraft* factors — including one of the three most important, *see GoTo.com*, 202 F.3d at 1205 — and post-purchase confusion.

The court's denial of Abercrombie's motion for a preliminary injunction must be vacated. *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (vacating and remanding for reconsideration a district court's denial of preliminary injunction in part because of "[t]he district court['s] erroneous focus solely on pre-sale confusion factors"); *Pyrodyne Corp. v. Pyrotechnics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1988) (reversing denial of preliminary injunction as based on erroneous legal standard).

**[15]** However, we cannot conclude from the record that Abercrombie will necessarily be able to show a probability of success on its trademark infringement claim once the errors we have identified are corrected. We therefore decline to order the district court to grant the preliminary injunction and instead remand for further proceedings. *Cf. Pyrodyne*, 847 F.2d at 1403 (remanding for reconsideration using the correct legal standard).

## D.   Breach of Contract

Abercrombie also appeals the district court's denial of a preliminary injunction on breach of contract grounds. According to Abercrombie, Moose Creek's new logos represent a colorable imitation of the Moose Creek Polo Moose that Moose Creek was contractually barred from using under the parties' prior settlement agreement. The district court held that Abercrombie had not shown a likelihood of success on the claim.

**[16]** A "colorable imitation" is "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127. Careful inspection is required to distinguish a colorable imitation from the genuine, in contrast to situations "when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other." *McLean v. Fleming*, 96 U.S. 245, 255 (1877).

**[17]** The district court's denial of a preliminary injunction on these grounds was not an abuse of discretion. Although some of the court's factual findings were a product of the court's reliance on the masthead version of Moose Creek's mark, other findings and additional differences bolster the court's conclusion. The configuration of the front legs, the head, and the antlers of the respective marks differ, as the court recognized. Moose Creek's new mark is monochromatic, while the Polo Moose used two colors, giving it a three-dimensional appearance. Based on these differences, "ordinary attention" would enable a purchaser "at once to discriminate the one from the other." *Id.*

## III.   CONCLUSION

The district court's denial of Abercrombie's motion for preliminary injunction is VACATED and the case is REMANDED for reconsideration.